UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTONIO HARRIS, #99-B-2849,

        Petitioner,

        -v-                                 05-CV-0160(MAT)
                                            **ORDER**

PEOPLE OF THE STATE OF NEW YORK,

        Respondent.

## I. Introduction

Petitioner Antonio Harris ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of two counts of Murder in the First Degree (N.Y. Penal Law §§ 125.25[3], 20.00); Attempted Robbery in the First Degree (Penal Law §§ 110.00, 160.15[1], 20.00); and Burglary in the First Degree (Penal Law §§ 140.30[2], 20.00). Petitioner was convicted following a jury trial before Justice Robert Noonan in Erie County Supreme Court on October 28, 1999.

## II. Factual Background and Procedural History

Petitioner's convictions arose out of an incident that occurred on August 7, 1998, wherein Michael Organek ("Organek" or "the victim") was stabbed in the eye with a hollow metal rod in his North Street apartment in Buffalo, New York, over an unsettled drug debt. The victim died on August 11, 1998 as a result of a severe head injury. T. 448.[1]

---

[1] Citations to "T.___" refer to the trial transcript; citations to "S.___" refer to the sentencing transcript; citations to "J.S.___" refer to the jury selection transcript.

On August 7, 1998, Antonio Harris ("petitioner"), his cousin, Robert Hennegan ("Hennegan"), and acquaintance Anthony Franklin ("Franklin") were summoned to an apartment building at 307 North Street to confront a man that petitioner's other cousin, LaTwett Harris ("Harris"), claimed to have harassed her.[2] When petitioner, Franklin, and Hennegan arrived at 307 North Street, Harris and Organek greeted them at the entrance and let them inside the building. Apparently, the victim owed Harris $75 for crack-cocaine she sold him, but did not have the money to pay her. Organek told the men that if they accompanied him to a nearby doughnut shop, he could borrow the money from a friend to pay Harris. T. 363, 480-81. They walked a few blocks to the doughnut shop, where Organek went in to look for his friend, but he returned empty-handed. T. 56-57.

Petitioner, Franklin, Hennegan, Harris and Organek then returned to the North Street apartments, where Organek was going to "get the money" for Harris. T. 482. As the group walked up to the third floor, Franklin asked Organek if he could use his telephone. The victim assented but cautioned that he only wanted one man in the room with him at a time. Regardless, petitioner and Hennegan followed Franklin inside the victim's apartment. T. 60. While Franklin made a phone call, petitioner confronted the victim about the money he owed Harris. When Organek responded that he did not

---

[2] Harris told petitioner that she had "a problem" and that petitioner should "bring his boys" with him, but did not elaborate. When petitioner and his friends arrived, he learned that Organek owed Harris money, and petitioner was called to help her retrieve it. T. 474-75, 480.

have it, petitioner hit him once, as did either Franklin or Hennegan. T. 62. At that point, the victim started screaming and reached for a meat cleaver on his night stand. Id. Hennegan picked up a metal sweeper, but dropped it amidst the "commotion", and he and petitioner ran out of the room. T. 63. Shortly thereafter, Franklin ran into the hallway and said, "I threw a pole in his eye . . . and it stuck." T. 64. The three men and Harris fled the building and drove to Harris's apartment in Riverside. T. 65.

Petitioner, Hennegan, Franklin, and Harris were all charged with the murder of Michael Organek under accessorial liability and felony murder theories. See Penal Law §§ 125.25[3], 20.00). Petitioner was the only defendant to proceed to trial, while Harris, Hennegan, and Franklin each pleaded guilty to reduced charges. Hennegan testified as the prosecution's key witness, and petitioner testified in his own behalf.

Petitioner was ultimately convicted of two counts of second-degree murder, and one count each of burglary and attempted robbery. He was sentenced to concurrent, indeterminate terms of imprisonment of twenty years to life on each murder conviction, 12 ½ to fifteen years for the burglary conviction, and 7 ½ to 15 years for the attempted robbery. S. 8-9.

Through counsel, petitioner filed a direct appeal to the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Harris, 1 A.D. 3d 881 (4th

Dept. 2003); lv. denied, 2 N.Y.3d 740 (2004).

Petitioner then sought *vacatur* of his conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on the ground that the prosecution knowingly presented false material evidence at trial. See 440.10 Mot. dated 12/11/2003; Respondent's ("Resp't") Ex. D. The state court denied the claim because petitioner's allegations were contradicted by court record or were not supported by any other evidence. See Memorandum and Order, No. 98-1975-S01, dated 4/28/2004. Petitioner then brought a second § 440.10 motion alleging ineffective assistance of trial counsel. See 440.10 Mot. dated 2/15/2005; Resp't Ex. F. The state court denied that motion as well. See Decision and Order, No. 98-1975-S01, dated 6/8/2005.

Petitioner then brought the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254, raising the following claims for relief: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct, including Brady and Batson violations; (3) petitioner had established an affirmative defense to felony murder; and (4) evidence was legally insufficient to support the convictions of robbery or burglary. Pet. ¶ 12, Grounds One through Four; Petitioner's ("Pet'r) Mem. of Law (Dkt. ## 1, 21).

The respondent has filed an answer and memorandum of law in opposition to the habeas petition. (Dkt. ## 5, 6). For the reasons that follow, the petition for habeas corpus is denied and the action is dismissed.

## III. Discussion

### A. General Principles

#### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

#### 2. Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally

designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

### 3. Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence

that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question ." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B. Merits of the Petition**

**1. Ineffective Assistance of Trial Counsel**

Petitioner alleges, as he did in his second § 440.10 motion, that his attorney was constitutionally ineffective because she did not "ask witnesses important and fundamental questions", referring the sentencing benefits received in exchange for "their" trial testimony. Pet. ¶ 12, Ground One; 440.10 Mot. dated 2/15/2005. The state court rejected the claim on procedural grounds based on petitioner's failure to raise the issue on direct appeal, citing C.P.L. § 440.10(2)(c). See Decision and Order, No. 98-1975-S01, dated 6/8/2005. It is therefore procedurally defaulted and precluded from habeas review. See Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review.") Petitioner has not alleged cause for the procedural default or prejudice resulting therefrom. He has also not argued that a miscarriage of justice would occur if the Court declined to review this claim on the merits.

In any event, petitioner's claim is without merit. To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). To meet the Strickland

standards, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694.

Petitioner's primary allegation is that his attorney failed to cross-examine co-defendant Robert Hennegan concerning a possible youthful offender adjudication, and thus a more lenient sentence, in exchange for his testimony at petitioner's trial.[3] See C.P.L. § 720.20; N.Y. Penal Law § 60.20. Hennegan was the first prosecution witness to testify at petitioner's trial. He acknowledged that he was a named defendant in the instant indictment and that he had entered a guilty plea to attempted robbery for his role in the crime. T. 44-45. He noted that the guilty plea exposed him to a potential sentence of three to six years and that he pleaded guilty to "become a prosecution witness." T. 45-46.

Because at the time of trial, Hennegan had not yet received youthful offender status, defense counsel could not have cross-examined him on the youthful offender adjudication. Counsel did,

---

[3] Prior to testifying at petitioner's trial, Robert Hennegan pleaded guilty to one count of Attempted Robbery in the First Degree (Penal Law §§ 110.00, 160.15[1]). During Hennegan's plea proceeding, the court indicated that there was a possibility of a youthful offender adjudication, but that status was not a condition of the plea, and that Hennegan's sentencing would be deferred until after he testified at the trials of his co-defendants. See Plea Minutes of Robert Hennegan, No. 98-1975-S01, dated 6/28/1999 at 2-4. The trial court went on to explain that if youthful offender status were denied for Hennegan, he faced three to six years imprisonment. Id. at 4. Hennegan was ultimately sentenced, on July 6, 2000, to six months incarceration and five years of probation.

however, cross-examine Hennegan on the underlying facts of the case, i.e., the facts of his plea to the attempted robbery. She elicited inconsistencies between Hennegan's grand jury testimony and his testimony at trial, and also pointed out discrepancies in two statements that Hennegan made to police. Hennegan also acknowledged that he pleaded guilty because he was given a "fairly certain result." T. 114-15, 131-32.

Even if counsel had elicited from Hennegan that he stood the *possibility* of receiving youthful offender treatment as a result of his guilty plea, the outcome of petitioner's trial would not have been different. The jury was aware that Hennegan pleaded guilty, admitting to the attempted robbery of the victim. Hennegan's testimony was, in fact, consistent with petitioner's trial testimony as well as with two statements given to police by the petitioner. Thus, in light of the overwhelming evidence of petitioner's guilt, counsel's failure to elicit Hennegan's potential youthful offender treatment did not prejudice petitioner's trial. Strickland, 466 U.S. at 695.

### 2. Prosecutorial Misconduct

In petitioner's direct appeal, he raised a claim that the prosecutor improperly withheld information which could be used to impeach a prosecution witness in violation of Brady v. Maryland, 373 U.S. 83 (1962). He also claimed that the prosecutor's summation contained improper remarks, which deprived petitioner of his right

to a fair trial. See Pet. ¶ 12, Ground Two; Pet'r Appellate Br. 9, 25. The Fourth Department held that petitioner failed to preserve both contentions for appellate review, citing C.P.L. § 470.05(2). Harris, 1 A.D.3d at 881.

This Circuit has long recognized that New York's preservation rule, codified at C.P.L. § 470.05(2), is an adequate and independent state procedural rule barring habeas review. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (holding that state court's reliance on contemporaneous objection rule was as an independent and adequate state ground which barred habeas review of claims of prosecutorial misconduct); see also Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994); Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir. 1991).

In the instant case, the state appellate court specifically cited to C.P.L. § 470.05(2) as a basis to deny petitioner's prosecutorial misconduct and Brady claims. Consequently, those claims are procedurally defaulted absent a showing of both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice will occur should the Court fail to consider the claim. Petitioner has not made a showing of any of these elements and the procedurally default therefore cannot be excused. This claim is dismissed.

### 3. <u>Batson</u> Challenge

As part of his prosecutorial misconduct claim, petitioner avers that the prosecutor violated the precepts of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by exercising peremptory challenges to two prospective African-American jurors. Pet. ¶ 12, Ground Two. The Appellate Division denied petitioner's <u>Batson</u> claim on the merits, holding: "The court properly determined that the prosecutor's explanations for exercising peremptory challenges with respect to those jurors were race-neutral, and defendant failed to meet his burden of establishing that those explanations were pretextual." <u>Harris</u>, 1 A.D.3d at 881. (citations omitted).[4]

In <u>Batson v. Kentucky</u>, the Supreme Court held that the Equal Protection Clause of the Constitution prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant." 476 U.S. at 89. There are three steps to a <u>Batson</u> inquiry. Initially, the opponent of a peremptory challenge must make out a *prima facia* case of discrimination. <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995). The burden of production then shifts to the proponent of the strike to come forward with a race-neutral explanation. <u>Id.</u> "The second step of this process does not demand an explanation

---

[4] Petitioner did not raise the <u>Batson</u> issue in his leave letter to the New York State Court of Appeals. It is therefore unexhausted. <u>See</u> <u>infra</u> Part III.B.4. Notwithstanding the procedural bar, the underlying merits of petitioner's claim are easily resolved and are discussed herein.

that is persuasive, or even plausible." Id. at 767-68. If a race-neutral explanation is provided, the trial court must then decide whether the opponent challenging the strike has proved purposeful discrimination. Id. at 767. That determination is a finding of fact entitled to deference by the reviewing court. Hernandez v. New York, 500 U.S. 352, 364-66 (1991); see Purkett, 514 U.S. at 769 ("[I]n habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'") (citation omitted); United States v. Douglas, 525 F.3d 225, 239 (2d Cir. 2008) ("Since a finding as to whether there was intentional discrimination is a finding of fact, and the trial court findings in this context largely will turn on evaluation of credibility, the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous.")(citation omitted); see generally 28 U.S.C. §§ 2254(d)(2), (e)(1) (state court factual findings are presumed correct).

In the instant case, the prosecutor first exercised a peremptory challenge to an African-American woman who was a social worker, employed for eleven years at an in-patient program for clients addicted to drugs and alcohol. J.S. 413. After defense counsel raised the Batson issue, the prosecutor explained that, irrespective of the juror's race, "[s]omebody who's got a bachelor

of social work and works with addicts in a rehabilitation treatment center is someone that I consider to be a juror that I don't want on a case at all, period. Nevertheless, a case of a murder precipitated by a drug deal gone bad." J.S. 415. He further noted that the challenge stemmed from the juror's "background, training, experience, and employment." Id. The trial court determined that the prosecutor's explanation was race-neutral and credible. Id. at 415-416.

The next juror that the prosecutor sought to exclude was a forty-year-old African-American corrections officer employed at a maximum security facility in New York State. J.S. 490-91. When the prosecutor exercised a peremptory challenge to that juror, defense counsel objected, stating that, "this is a prosecution juror except for the color of his skin . . . ." J.S. 544. The prosecutor responded that he had observed that particular juror "sprawled out, rolling his eyes, and smiling incongruously at the process that was the picking of the jury in a murder case." J.S. 545. He further noted that the juror appeared to be guarded in his responses, indicating that he probably was not telling the truth and was contemptuous of the whole process. Id. In granting the prosecution's challenge, the trial court stated that the juror "did appear to have mannerisms suggesting a bit of an aloofness or abstaining for the whole process," and that he "appear[ed] to be . . . mentally editing what he was going to disclose in response to

questions . . . ." J.S. 549.

Although petitioner does not expound upon his Batson claim in his petition or his accompanying memorandum, he presumably seeks to allege that the prosecution's reasons were pretextual, as he did on direct appeal. See Pet. ¶ 12, Ground Two; Pet'r Appellate Br. 32-39. However, the record reflects that the prosecutor's explanations for his peremptory challenges were clearly "relevant to the accepted trial strategy of selecting jurors who are able to impartially consider the evidence at trial." Palmer v. Greiner, No. 00 Civ. 6677 WHPRLE, 2003 WL 22019740 at *7 (S.D.N.Y. Aug. 22, 2003).

This Circuit has held that strikes based on a prospective juror's occupation are acceptable. See Messiah v. Duncan, 435 F.3d 186, 200 (2d Cir. 2006) ("It is not implausible that the prosecutor would have believed that a full-time social service provider who had dedicated his professional life to helping others might have more sympathy for a defendant . . . ."); see also Thigpen v. Brown, No. 06 CV 3110(NG)(VVP), 2008 WL 5110890 at *11 (E.D.N.Y. Dec. 2, 2008) (juror excluded on basis of profession). Similarly, the apparent mental state of a juror can also justify a peremptory strike. Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992) ("[A]n impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge."); see also Green v. Travis,

414 F.3d 288, 300 (2d Cir. 2005) (stating that the "unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge."); Thigpen, 2008 WL 5110890 at *11 (juror stricken because of "combative nature"). Petitioner has thus failed to establish by clear and convincing evidence that the trial court's factual findings that the prosecutor's explanations were race-neutral was "clearly erroneous". Consequently, I do not find that the Appellate Division's determination was contrary to or an unreasonable application of Batson v. Kentucky.

### 4. Sufficiency of the Evidence / Proof of Affirmative Defense

In grounds three and four of his habeas petition, petitioner alleges that the evidence adduced at trial was insufficient to support the convictions of attempted robbery and burglary, and that petitioner established the affirmative defense to felony murder. On direct appeal, the Fourth Department rejected both contentions. Harris, 1 A.D.3d at 881. He did not raise either issue in his letter requesting leave to the New York State Court of Appeals. Rather, petitioner's arguments focused on the fact that the jury was never told that Hennegan was adjudicated a youthful offender for his part in the crime and received a prison sentence of only six months, and that the prosecution had a duty to reveal Hennegan's plea arrangement under Brady v. Maryland. At the close of the letter, permission was requested that the highest court

review "all issues" contained in petitioner's brief on appeal. Because petitioner's claims relating to the sufficiency of the proof at trial were not specifically alleged in his leave application to the New York Court of Appeals, they are technically unexhausted.

Arguments raised in a federal habeas petition may only be considered where the petitioner has first exhausted all state remedies. Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991). State remedies are considered exhausted when a petitioner has presented the federal constitutional claim asserted in the petition to the highest state court, and has informed that court of both the legal and factual bases for the federal claim. Picard v. Connor, 404 U.S. 270, 276-77 (1971); Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (en banc). Where a petitioner raises a single issue in his application for leave to appeal to the New York Court of Appeals, all other issues are not adequately presented and thus barred from federal review. Jordan v. Lefevre, 206 F.3d 196 (2d Cir. 2000); see also Grey, 933 F.2d at 120. Here, as in Jordan, petitioner raised one primary issue in his leave application to the New York State Court of Appeals, while making a passing reference to the remaining claims in his brief on direct appeal. Because the Second Circuit does not consider these claims to be fairly presented to the state courts, they are unexhausted. See generally, Jordan, 206 F.3d 198-99; accord Batts v. Artuz, 254

Fed.Appx. 855, 856 (2d Cir. 2007).

Moreover, petitioner cannot again seek leave to appeal this claim in the Court of Appeals because he has already made one request for leave to appeal to which he is entitled. See Grey, 933 F.2d at 120; N.Y. Court Rules § 500.20. Collateral review of this claim is also barred because it was previously raised and determined on the merits on direct appeal. C.P.L. § 440.10(2)(a). The Court finds that petitioner no longer has "remedies available" in the New York State courts under 28 U.S.C. § 2254(b) and his claim is thus deemed exhausted but procedurally defaulted. See Correa v. Duncan, 172 F.Supp.2d 378, 382 (E.D.N.Y. 2001) (petitioner's unexhausted claim was procedurally barred where petitioner was precluded from raising the claim before the state's highest court because he had already made the one request for leave to appeal to which he was entitled, and collateral review would be barred under C.P.L. § 440.10(2)(a) because issue had previously been addressed on direct appeal); see also Harris v. Artuz, 2000 WL 358377 at *2-3 (S.D.N.Y. Apr.7, 2000).

Absent a showing of cause for the procedural default and prejudice resulting therefrom, or that he is actually innocent, petitioner is barred from litigating the merits of this claim. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). Petitioner makes no such showing, and this claim is dismissed.

**IV. Conclusion**

For the reasons stated above, Antonio Harris's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

    s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    February 19, 2010
           Rochester, New York